IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
2:08-CV-22-FL

| PETER BURKE, SR., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| PASQUOTANK COUNTY BOARD OF ELECTIONS, | ) ) ) ) | |
| Defendant. | ) | |

This case arises from the attempt by plaintiff Peter Burke, Sr. ("plaintiff") to vote in the 5 May 2008 Democratic primary in Pasquotank County. It now comes before the court on the motion for summary judgment (D.E. 21) by defendant Pasquotank County Board of Elections ("defendant"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion seeks dismissal of the case in its entirety. It is supported by a memorandum (D.E. 22) and the following evidentiary materials: the transcript of plaintiff's deposition (D.E. 23); his criminal record (D.E. 21-2); an affidavit by defendant's Director, Linda Page (D.E. 21-3); and voting records for plaintiff (D.E. 21-4). Plaintiff, who is proceeding pro se, has filed a handwritten response in opposition (D.E. 24). The motion was referred to the undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that defendant's motion be allowed.

## BACKGROUND

### I.      PROCEDURAL HISTORY

Plaintiff initiated proceedings in this case by filing a motion to proceed *in forma pauperis* (D.E. 1) on 6 June 2008. After approval of the motion (*see* D.E. 4), plaintiff's complaint (D.E. 5)

was filed on 17 June 2008.

The complaint consists of a three-page form completed in handwriting. A two-page handwritten letter addressed to the clerk (D.E. 5-2) is attached to and seemingly incorporated by reference in the complaint. (*See* Compl. 2). The letter provides most of the details of plaintiff's allegations.

Defendant filed an answer to the complaint on 15 September 2008 (D.E. 15), and discovery closed on 30 April 2009 (*see* Case Man. Order (D.E. 20) 2 § I.C.). Defendant timely filed its motion for summary judgment thereafter.

## II.   NORTH CAROLINA VOTING LAW

Under North Carolina law, in order to vote in a primary or general election, a person must be registered to do so. N.C. Gen. Stat. § 163-59. The registration must occur at least 25 days before an election in order for the person's vote to count in the election, *id.* § 163-82.6, except under the one-stop voting program, which permits registration closer to the elections, *id.* § 163-82.20A. A person convicted of a felony is disqualified from voting until his citizenship rights are restored. *Id.* § 163-55(a)(2). Restoration of citizenship rights occurs upon the person's unconditional discharge from the Department of Correction. *Id.* § 13-1. Because disqualification entails revocation of any existing registration, *see id.* § 163-82.14(c)(2), a person whose right to vote has been restored must re-register in order to be able to vote. *Id.* § 163-82.20A

In October 2007, North Carolina passed a law directing the State Board of Elections, the Department of Correction, and the Administrative Office of the Courts to jointly develop and implement programs informing felons at the time of restoration of their citizenship rights that their

disqualification from voting is removed but that they still need to register to vote and facilitating their registration. *Id.* § 163-82.20A. The statute does not provide for its retroactive application.

If at an election voting records do not show a person to be registered but he claims to be registered, he is to be given a provisional ballot pending further investigation into his registration. *Id.* § 163-166.11. The provisional ballot will be counted if the person's registration is confirmed. *Id.* § 163-166.11(5).

## III. PLAINTIFF'S VOTER REGISTRATION HISTORY

Plaintiff initially registered to vote in Pasquotank County in December 1998. (Page Aff. ¶ 4; Voting Records 1). He was convicted of a felony in 2002 and his voting registration was revoked. (Page Aff. ¶ 5; Voting Records 2).[1] In 2005, his right to vote was restored. (*See* Voting Records 2). Plaintiff re-registered to vote on or after the day of the May 2008 primary. (*See* Page Aff. 10; Voting Records 5, 6; Pl.'s Resp. 2-3; Pl.'s Dep. 30-31).[2]

## IV. PLAINTIFF'S ALLEGATIONS

As indicated, plaintiff's allegations focus on the 5 May 2008 Democratic primary. In the complaint and accompanying letter, he alleges that on that day when he arrived at his assigned polling place in Pasquotank County to vote, he was informed that he was not listed on the voter rolls. (Ltr. 1). He was given a "Provisional Voter call-in" form, which he filled out with the assistance of a volunteer. (*Id.*). The volunteer called defendant's office on plaintiff's behalf from the polling

---

[1] There are other convictions in plaintiff's criminal record. (*See* Crim. Record).

[2] Defendant contends that plaintiff re-registered on the date of the primary and, in support of this contention, cites to the affidavit testimony of Page, a voting record showing plaintiff's re-registration as of that date, and a registration form dated that date completed in handwriting and signed purportedly by plaintiff. (Page Aff. 10; Voting Records 5, 6). Plaintiff contends in his response and deposition testimony that he did not re-register until after he filed this lawsuit. (Pl.'s Resp. 2-3; Pl.'s Dep. 30-31).

3

location and then handed plaintiff the telephone. (*Id.*). Defendant's representative advised plaintiff that his name was suspended due to his felony conviction. (*Id.*). Plaintiff responded that he believed his right to vote had been reinstated upon the completion of his prison sentence. (*Id.*). Defendant's representative agreed, but said he still had to re-register to vote. (*Id.* 2). The representative added, though, that the telephone call would be accepted as his re-registration and the vote he cast that day would be counted. (*Id.* 2).

Two weeks later, plaintiff called a number to see if his vote had, in fact, been counted and was told that it had not been. (*Id.*). He contends that defendant had deliberately lied in telling him his vote would be counted. (*Id.*). He also alleges that votes he cast in the previous three or four years were not counted either, even though he was led to believe that they would be. (*Id.*).[3]

Plaintiff does not identify the legal claims underlying his allegations in his complaint or other filings. He seeks $1,000,000.00 in damages and a verification from the court that his name is listed on the voter rolls and that his vote will be counted in all future elections.

## DISCUSSION

Defendant seeks summary judgment on two principal grounds: (1) that the Pasquotank County Board of Elections is not a proper party and (2) that the record fails to show as a matter of law that defendant violated any of plaintiff's rights. The court will examine each of these grounds in turn after a review of the applicable standard of review.

---

[3] At his deposition and in his response to the motion, plaintiff alleged facts at variance with those alleged in the complaint and supporting letter. At his deposition, plaintiff denied being told during the phone conversation on the day of the primary that his name was removed from the list or that he was required to re-register. (Pl.'s Dep. (D.E. 23) 28-29). He contended that he was not informed of the need to re-register until several weeks after the election. (*Id.* 39). In his response to the motion, plaintiff contends that the very first time he was informed that he was required to re-register was after he filed this lawsuit. (Pl.'s Resp. 3-4). These discrepancies are not material to the court's analysis.

4

## I. STANDARD OF REVIEW

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II. CAPACITY OF DEFENDANT TO BE SUED

Rule 17(b) of the Federal Rules of Civil Procedure outlines the requirements for determining whether a party possesses the capacity to sue or be sued in federal court. It states:

Capacity to sue or be sued is determined as follows:

> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> (2) for a corporation, by the law under which it was organized; and
>
> (3) for all other parties, by the law of the state where the court is located, except that:
>
> (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and
>
> (B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

Fed. R. Civ. P. 17(b). Accordingly, defendant's capacity to be sued is to be determined under North Carolina law, the law of the state where this court is located. *Id.* (b)(3).

North Carolina political subdivisions have the capacity to sue and be sued only if a statute establishes them as separate legal entities with that capacity. *Motel 6 Operating, L.P. v. Gaston County, North Carolina*, No. 3:08-CV-00390-FDW, 2009 WL 1940499, at *1 (W.D.N.C. 2 July 2009). The enabling statutes for the North Carolina county boards of elections do not confer on them the capacity to sue or be sued. N.C. Gen. Stat. § 163-33. The court therefore concludes that defendant is not subject to suit in its own name. *See Motel 6*, 2009 WL 1940499, at *1 (dismissing claims against county board of health and county health department for lack of capacity to be sued); *Mack v. Fox*, No. 1:07CV760, 2008 WL 4832995, at *6 n.4 (M.D.N.C. 4 Nov. 2008) (dismissing claims against county magistrate's office for lack of capacity to be sued).

In certain circumstances, this type of defect would not necessarily be a proper ground for summary judgment because of the possibility of amending the complaint to substitute the proper party that does have the capacity to be sued and the liberal policy under Rule 15 of the Federal Rules

of Civil Procedure favoring amendments. The court might even be able to raise the issue of amendment on its own initiative. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (holding that court should permit time for amendment *sua sponte* when the amendment would defeat a motion for failure to state a claim). The proper party here would appear to be Pasquotank County. *See* N.C. Gen. Stat. § 153A-11 (providing counties the capacity to sue and be sued); *Motel 6*, 2009 WL 1940499, at *1 (holding county health boards in North Carolina to be subdivisions of a county) (citing *Avery v. Burke County*, 660 F.2d 111, 113-14 (4th Cir. 1981)).

Amendment would not, however, be a possibility in this case. A motion to amend must be denied if the amendment would be futile. *E.g., United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000); *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Because, as discussed below, plaintiff lacks any claims as a matter of law, amendment of the complaint to include the proper party with capacity to be sued would be futile. It is accordingly RECOMMENDED that defendant be allowed summary judgment on the ground that it lacks the capacity to be sued.

### III. SUFFICIENCY OF PLAINTIFF'S CLAIMS

#### A. Plaintiff as Asserting 42 U.S.C. § 1983 Claims for Violation of his Fourteenth Amendment Rights

As indicated, plaintiff does not identify the legal basis for his claims, citing no constitutional or statutory provisions. Giving the complaint a liberal reading, the court interprets plaintiff to be asserting claims under 42 U.S.C. § 1983 ("§ 1983") for infringement of his right to vote in violation of his rights under the Fourteenth Amendment to the United States Constitution.

Section 1983, of course, provides a right of action for alleged constitutional violations. Specifically, § 1983 permits a plaintiff to assert a direct cause of action against any "person" who

under color of law violates constitutionally protected rights, privileges, or immunities. 42 U.S.C. § 1983; *Hughes v. Bedsole,* 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) ("[Plaintiff's] claim under the Fourteenth Amendment merges into her § 1983 claim because § 1983 merely creates a statutory basis to receive a remedy for the deprivation of a constitutional right."); *Googerdy v. N.C. Agric. & Technical St. Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005). "Person," as used in § 1983, includes local governmental bodies. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Ashby v. Isle of Wight County School Bd.*, 354 F. Supp. 2d 616, 625 (E.D. Va. 2004).

As to the underlying constitutional right implicated here, the Supreme Court has recognized the right to vote as a fundamental right entitled to protection under the Fourteenth Amendment. *Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 626 (1969); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1976) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."). This protection applies specifically to state and local elections. *Perry-Bey v. City of Norfolk*, No. 2:08cv100, 2009 WL 5251896, at * 13 (E.D. Va. 15 Jan. 2009).

The Fourteenth Amendment does not, of course, preclude any constraints on the right to vote. Each state is delegated with the "primary power and responsibility to conduct, and to police, [its] own elections." *Lake v. State Bd. of Elections of North Carolina*, 798 F. Supp. 1199, 1207 (M.D.N.C. 1992); *White-Battle v. Democratic Party of Va.*, 323 F. Supp. 2d 696, 704-05 (E.D. Va. 2004) (federal courts should not entertain constitutional claims arising from election irregularities in the absence of fundamental unfairness), *aff'd*, 134 Fed. Appx. 641 (4th Cir. 2005). The Supreme

Court has held that even-handed restrictions protecting the integrity and reliability of the electoral process itself are permissible. *Crawford v. Marion County Election Board*, 553 U.S. 181, __, 128 S. Ct. 1610, 1616 (2008). The Fourteenth Amendment itself permits the denial of the right to vote upon criminal conviction. US. Const. Amend. XIV, cl. 2; *Richardson v. Ramirez*, 418 U.S. 24, 55 (1974) ("[T]he exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment."); *Wilson v. Goodwyn*, 522 F. Supp. 1214, 1216 (E.D.N.C. 1981) ("Provisions in state statutes and constitutions which deny convicted felons the right to vote and hold office do not violate the various rights guaranteed by the Constitution of the United States.").

The protections afforded the right to vote by the Fourteenth Amendment are set forth in two separate clauses—the Due Process Clause and the Equal Protection Clause. The standards under each differ. The court will therefore address the sufficiency of plaintiff's claims under each clause separately.

### B. Due Process Claims

Although the language they use varies, the courts agree that the Due Process Clause protects a person from only exceptional election irregularities, not ordinary ones. As the Fourth Circuit has stated, "It is settled that if the election process reaches the point of 'patent and fundamental unfairness,' the due process clause may be violated . . . . [b]ut not every election irregularity gives rise to a constitutional claim." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)). In other words, "[o]nly when election irregularities are 'fundamentally unfair' and transcend 'garden variety' problems do federal courts have a duty to step in to ensure that citizens' rights are protected." *Glover v. South Carolina Democratic Party*, No. C/A 4-04-CV-2171-25, 2004 WL 3262756, at *5 (D.S.C. 3 Sept. 2004)

(internal citations and quotations omitted), *aff'd*, 122 Fed. Appx. 83 (4th Cir. 2005). In like vein, another court has ruled that "[t]he Due Process Clause is implicated, and § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008); *see also Kozuszek v. Brewer*, 546 F.3d 485, 488 (7th Cir. 2008) ("Section 1983 is implicated only when there is 'willful conduct' that 'undermines the organic processes by which candidates are elected.'") (internal citations omitted); *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) ("In general, garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election.").

In *Hendon*, the Fourth Circuit identified several factors a court should consider in determining whether an irregularity rises to the level of a due process violation. 710 F.2d at 182. These factors are the "severity [of the irregularity], whether it was intentional or more of a negligent failure to carry out properly the state election procedures, and whether it erodes the democratic process." *Id.* (citing *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir.1980)).

Applying these factors and the other principles discussed here, the court finds as a matter of law that the record does not show the patent and fundamental unfairness necessary for plaintiff to sustain a claim under the Due Process Clause. The gravamen of plaintiff's allegations is that a representative of defendant lied to him that his vote at the May 2008 primary would be counted so that he would not re-register and his vote would continue not to be counted in future elections. He alleges that defendant had lied to him in previous elections for the same purpose.

These alleged facts do not establish the requisite unfairness, in part, because they do not implicate the fairness of the statutory scheme that required plaintiff to re-register to vote upon restoration of his citizenship rights. Plaintiff does not challenge the legality of that scheme.

In addition, it is undisputed that plaintiff had not complied with the statutory requirement to re-register until after the May 2008 primary. Therefore, he was precluded by law from voting in the May 2008 primary or the elections in the prior years about which he complains.

Further, plaintiff has come forward with no evidence, only unsubstantiated speculation, that defendant's representatives intended to mislead him about the validity of his vote or to prevent him from re-registering. He has also not shown that the treatment he was accorded was the result of any policy, procedure, or custom of defendant. *Monell*, 436 U.S. at 690 (holding that a local government entity is liable for the unconstitutional acts of its employees only if they were acting pursuant to a policy, procedure, or custom of the entity). Nor has plaintiff adduced any evidence that any other person was accorded similar treatment by defendant or that his situation was indicative of a systemic failure on defendant's part. Thus, there is no evidence that plaintiff's inability to vote tainted the election process or affected the outcome of any election.

Additionally, plaintiff has not presented evidence that defendant's conduct was the result of discrimination based on his race. Notably, plaintiff did not even identify his race or even mention any potential racially motivated reason for defendant's conduct in his complaint or deposition testimony. For the first time, in his response to the instant motion, plaintiff contends that defendant regularly misled a "certain racial group" into believing that their votes were being counted when they were not. (Pl.'s Resp. 3-4). But he does not identify the racial group to which he refers, nor does he establish any connection between that racial group and his status as a prior felon. He submitted

11

no supporting evidence for these allegations. These barren, conclusory allegations fail to support a claim for racial discrimination.[4] *See Vallejo v. City of Tuscon*, No. 08-5000 TUC-DCB, 2009 WL 1835115, at *3 (D. Ariz. 26 Jun. 2009).

Although North Carolina law now provides for notice to felons of their need to re-register to vote after restoration of their citizenship rights, this law was adopted some two years after plaintiff's rights were restored and it contains no retroactivity provision. Plaintiff has no claims that he was due notice under this statute.

The determination that plaintiff lacks a viable due process claim is consistent with other holdings in comparable circumstances. For example, in *Vallejo,* 2009 WL 1835115, at *2-3, the plaintiff, a Mexican-American, alleged that officials violated his due process rights by wrongfully preventing him from casting a vote on the basis of his purported lack of sufficient identification. Defendants acknowledged that plaintiff should not have been turned away and, instead, should have been provided with a provisional ballot. Plaintiff asserted that the defendants' actions were motivated by racial animus. The court held that plaintiff had not shown that his rights were willfully or intentionally violated, that he was deprived of a provisional ballot on account of his race, or that the procedure for providing provisional ballots had a discriminatory impact on minorities. *Id.* at *2. The court accordingly dismissed plaintiff's due process claim. *Id.*

Here, the alleged deprivation plaintiff suffered in the May 2008 primary was arguably less severe than that suffered by the plaintiff in *Vallejo* because the instant plaintiff did not have the right

---

[4] For similar reasons, plaintiff has not stated a claim for a violation of the Fifteenth Amendment or the Voting Rights Act, both of which require a showing of intentional race-based discrimination. U.S. Const. amend. XV § 1 ("The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."); *Thornburg v. Gingles*, 478 U.S. 30, 35 (1986) (holding that to establish claim under the Voting Rights Act, plaintiff must show that act was intended to abridge or deny, or had the effect of abridging or denying, the right to vote based on race).

to vote in the primary and was provided a provisional ballot, whereas the plaintiff in *Vallejo* did have the right to vote in the election there and was not provided a provisional ballot. Moreover, the instant plaintiff has had an opportunity to develop his case through discovery, whereas the plaintiff in *Vallejo* had his due process claim terminated at the pleading stage, on the basis of a dismissal motion.

Similarly, in *Broyles v. Texas*, 643 F. Supp. 2d 894 (S.D. Tex. 2009), the court dismissed plaintiffs' § 1983 claims, which alleged that inadequate training and incompetency of poll officials led to the failure to offer provisional ballots to voters whose names did not appear on the registry. The court held that plaintiffs' allegations amounted to only "garden variety" election irregularities. 643 F. Supp. 2d at 900. It further ruled that there was no showing that defendants intended to interfere with plaintiffs' voting rights or that the irregularities had any effect on the outcome of the election. *Id.* The court dismissed the case, again on a dismissal motion, even though, unlike here, there were multiple plaintiffs and they were not given provisional ballots.

Likewise, in *Kozuszek*, 546 F.3d at 489-91, the court granted summary judgment to defendant on claims asserted by two plaintiffs that their votes were not counted and instead were willfully spoiled by election officials. The court held that because plaintiffs presented no evidence that the election officials' actions were motivated by impermissible reasons or that the election officials willfully misrepresented any facts, summary judgment on their claims was warranted. *Id.* The same circumstances are, of course, presented here.

For this and the other reasons stated, the court concludes that, as to plaintiff's due process claims, there is no genuine issue as to any material fact and defendant is entitled to judgment as a

matter of law. It is therefore RECOMMENDED that defendant's motion for summary judgment be allowed as to plaintiff's due process claims and these claims be dismissed.

C.   **Equal Protection Claims**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV § 1. The Fourth Circuit has held that "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated *and* that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (emphasis added). The centrality of the need for the unequal treatment to be intentional and purposeful has been recognized specifically in the electoral context: "To warrant relief under § 1983 for a violation of equal protection, there must be 'intentional and purposeful discrimination.'" *Vallejo*, 2009 WL 1835115, at *3 (internal quotations omitted). As with due process claims, garden variety election irregularities cannot establish a violation of equal protection rights. *Broyles*, 643 F. Supp. 2d at 900 ("[C]ourts faced with claims that election irregularities violated due process and equal protection rights have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities.") (internal citations omitted)).

For the same reasons set forth above, the court finds that plaintiff has not established a claim for violation of his equal protection rights under the Fourteenth Amendment. Most particularly, he has not come forward with any evidence that he was treated differently or unfairly as the result of intentional discrimination. *Rogers v. Lodge*, 458 U.S. 613, 617 (1982) ("[I]n order for the Equal Protection Clause to be violated, 'the invidious quality of a law claimed to be racially discriminatory

14

must ultimately be traced to a racially discriminatory purpose.'"); *see also White-Battle*, 323 F. Supp. 2d at 706 (holding that mere irregularities or errors which occur during an election do not rise to the level of an equal protection violation); *Mosely v. Price*, 300 F. Supp. 2d 389, 396-97 (E.D. Va. 2004) (holding that plaintiff's equal protection claim failed where plaintiff did not show that his right to vote, or to register to vote, was unfairly abridged or restricted).

For this and the other reasons stated, the court concludes that, as to plaintiff's equal protection claims, there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. It is therefore RECOMMENDED that defendant's motion for summary judgment be allowed as to plaintiff's equal protection claims and these claims be dismissed.

## CONCLUSION

For the foregoing reasons, there is no genuine issue as to any material fact, and defendant is entitled to judgment as a matter of law on all of plaintiff's claims, pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure. It is therefore RECOMMENDED that defendant's motion for summary judgment be ALLOWED and judgment be entered DISMISSING this case in its entirety with prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This 12th day of February, 2010.

James E. Gates
United States Magistrate Judge